IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM A. WHITE,                          *

     Plaintiff,                          *

v.                                         *          Civil Action No. GLR-23-1614

UNITED STATES OF AMERICA, et al.,          *

     Defendants.                          *

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants United States of America and Federal Bureau of Prisons'[1] Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 10) and self-represented Plaintiff William A. White's Motion for Leave to File Surreply (ECF No. 24). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion to Dismiss or, in the alternative, for Summary Judgment, construed as a motion to dismiss, and grant in part and deny in part the Motion for Leave to File Surreply.

---

[1] Because the Complaint was filed under the Federal Tort Claims Act ("FTCA"), the only proper Defendant in the case is the United States of America. See 28 U.S.C. § 1346(b). Accordingly, the Federal Bureau of Prisons shall be dismissed from suit.

## I.    BACKGROUND

**A.    <u>Factual Background</u>**

White is a prisoner in the custody of the Federal Bureau of Prisons ("BOP") and is currently incarcerated at the Federal Correctional Institution-Cumberland ("FCI-Cumberland) serving an aggregate 349-month term of imprisonment.[2] (<u>See</u> Compl. ¶ 2, ECF No. 1). White arrived at FCI-Cumberland on July 26, 2022. (<u>Id.</u> ¶ 11). According to White, he was diagnosed with Post-Traumatic Stress Disorder ("PTSD") in February of 2016, which he claims was caused by the conditions of his confinement between 2008 and 2014 and later exacerbated by his confinement to the Special Housing Unit ("SHU") at FCI-Cumberland. (<u>Id.</u> ¶ 8). At the time of his arrival at FCI-Cumberland, White was being treated with medication for his PTSD. (<u>Id.</u> ¶ 9). White also claims that he was additionally diagnosed with Major Depressive Disorder with psychotic features and at the time he arrived in Cumberland, he was in the "98th percentile for suicidal ideation." (<u>Id.</u> ¶ 10).

White was placed in the SHU upon arriving at FCI-Cumberland, which he claims was done because of a lack of bed space. (<u>Id.</u> ¶ 11). Defendant the United States explains, however, that White was placed in administrative detention status in the SHU for the additional purpose of precautionary quarantine due to the risk of COVID-19 transmission, and was transferred to the general population on August 22, 2022, when bed space became available. (Decl. Ricky Rakowski ["Rakowski Decl."] ¶ 4, ECF No. 10-3; Mem. L. Supp.

---

[2] Unless otherwise noted, the Court takes the following facts from the Complaint and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

Mot. Dismiss ["Mot."] at 2, ECF No. 10-1). The United States alleges that the SHU was chosen as the quarantine unit because it was self-contained and did not impact the general population units. (Decl. Justin Sines ["Sines Decl."] ¶ 4, ECF No. 10-4). In White's view, his placement in the SHU was inappropriate given that "defendants knew that the restriction of environmental stimuli inherent in SHU conditions would worsen [his] PTSD and/or depression and cause [him] serious emotional distress." (Compl. ¶ 11).

White alleges that while he was in the SHU from July 26, 2022, to August 22, 2022, he did not receive reviews mandated by federal regulations, which include a seven-day review that he would be able to attend in person. (Id. ¶ 11–12, 14). Records submitted by the United States indicate White received the required reviews. (Special Housing Unit Review ["SHU Review"] at 14, ECF No. 10-3; Bureau of Prisons Psychology Services Docs. ["Psych. Docs"] at 8, ECF 10-5).[3] The United States counters that "qualified health personnel visit each SHU inmate daily, including weekends and holidays." (Sines Decl. ¶ 5). Additionally, the United States asserts that psychology services staff make rounds in the SHU weekly, and any inmates who want to speak with a psychologist can make the request to the staff member conducting rounds. (Shane Sheetz Decl. ["Sheetz Decl."] ¶ 5, ECF No. 10-5). Further, according to the United States, a psychologist walks "cell to cell weekly to offer word puzzles/crosswords/etc." and performs monthly SHU reviews. (Id.). White maintains that his psychiatric conditions and emotional distress worsened while he

_____

[3] Citations to the page numbers of the Declarations' attachments refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

was in SHU confinement. (Compl. ¶ 13). The parties agree that White was released from the SHU on August 22, 2022. (See Compl. ¶ 14; Mot. at 2).

The United States explains that while White was in the SHU, he had the opportunity to request mental health services and medical care. (Sines Decl. ¶ 6). When White was given an intake evaluation by a psychologist at FCI Cumberland on July 25, 2022, it was noted that he had been diagnosed with PTSD on November 24, 2021, but he did not report any impairments in attention, memory, or general cognition at the time of the intake evaluation. (Sheetz Decl. ¶ 3). Additionally, White did not display "psychomotor abnormalities," did not demonstrate a need for regular mental health interventions, and did not have a history of serious functional impairment due to mental illness. (Id.). He was therefore cleared for housing without any mental health restrictions. (Id.; Psych. Docs at 9).

On July 28, 2022, White met with the former chief psychologist, Dr. Frank Hershberger, for his thirty-day psychology SHU review. (Sheetz Decl. ¶ 4). Dr. Hershberger noted that White "did not identify any significant distress of a psychological nature" and acted appropriately, and that "SHU staff did not identify any concerns regarding this inmate." (Id.). On July 28, 2022, a segregation review official ("SRO") also reviewed White's placement in the SHU, and White received weekly SHU reviews on August 1, 8, and 15, 2022. (Rakowski Decl. ¶¶ 5–6; SHU Review at 14).

According to White, the BOP had a COVID-19 policy in place at FCI-Cumberland that "discouraged inmates from reporting COVID-19 symptoms" because if such symptoms were reported or an inmate tested positive, he and his cellmate would be placed

in the SHU for ten days. (Compl. ¶ 15). White admits that the consequence of the policy was "unintended" but nevertheless resulted in inmates being denied "both medical and palliative care while in SHU." (Id. ¶ 16). An additional "unintended effect of the COVID-19 policy" according to White, was to "encourage the spread of COVID-19 at FCI-Cumberland." (Id. ¶ 17). White claims that the effects of the policy in place could have been discovered with "reasonable diligence." (Id.).

White contracted COVID-19 on or about September 2, 2022, allegedly as a result of the policy in place at FCI-Cumberland. (Id. ¶ 18). On September 12, 2022, White tested positive for COVID-19. (Id. ¶ 19; see also Sines Decl. ¶ 3). White was placed in quarantine in the SHU. (Compl. ¶ 19). According to White, he did not receive required SHU reviews, nor did he receive any medical care for his COVID-19. (Id. ¶¶ 20–21). The United States states that White was seen by Health Services on September 13, 2022, and had no complaints of coughing, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, nausea or vomiting at that time. (Sines Decl. ¶ 7; Medical R. at 15, ECF No. 10-4). Additionally, the United States asserts that White received a three-day SHU review by the SRO on September 15, 2022. (Rakowski Decl. ¶ 7; Special Housing Unit Review ["SHU Review 2"] at 16, ECF No. 10-3).

White shared the SHU cell with another inmate who he describes as "a seriously mentally ill man with bipolar disorder," who remained in the cell despite White's requests to change cellmates. (Compl. ¶ 23). According to White, the BOP is required under 28 C.F.R. § 541.3(c) to provide SHU inmates with adequate clothing. (Id. ¶ 24). In White's view, BOP Program Statement 5270.11 interprets the regulation to mean that BOP officials

are prohibited from "issuing paper clothing to seriously mentally ill inmates" and, in any event, "only a Warden, with the agreement of a psychologist and a Health Services Administrator, may order an inmate placed in paper clothing." (Id.). White states that this authority may not be delegated, and paper clothing must be changed daily. (Id.). White was placed in paper clothing after Officers McCoy and Rohrbaugh saw that White's cellmate had a torn sock in his hair that he was using as a "headdress." (Id. ¶ 25). When asked about the torn sock, White claims his cellmate admitted to tearing the sock. (Id.). Notwithstanding his cellmate's confession, White states he was forced to change into paper clothing and was charged with misconduct, but the charge was ultimately dismissed. (Id. ¶¶ 25–26). McCoy and Rohrbaugh told White that the decision to put him in paper clothes was made by Captain Ricky Rakowski. (Id. ¶ 29).

The United States explains that the request to put White into "paper clothing," which is also known as "alternate clothing," was made by the SHU officer and reviewed by the Health Services Administrator, a psychologist, the Warden, and Captain Rakowski. (Rakowski Decl. ¶ 8). The decision was made to put both White and his cellmate in paper clothing because neither White nor his cellmate took responsibility for destroying the Government-issued sock. (Id.). The United States confirms that White was left in the alternate clothing for a period of three days. (Id. ¶ 9). Inmates may have their alternate clothing exchanged daily if requested. (Id.). Their requests are not logged or tracked by staff. (Id.). Contrary to White's assertion, the United States states that White was present at his seven-day review on September 19, 2022, and he was released from the SHU on September 21, 2022. (Id. ¶¶ 10–11).

**B.**   **Procedural History**

White filed his Complaint on June 14, 2023. (ECF No. 1). He makes three claims: (1) negligence and negligent infliction of emotional distress ("NIED"); (2) intentional infliction of emotional distress ("IIED"); and (3) and violation of the Administrative Procedure Act ("APA"). (Compl. ¶¶ 31–42). He explains that his infliction of emotional distress claims are based on his placement in the SHU twice "without complying with federal regulations;" promulgating COVID-19 policies that encouraged the spread of the disease; denying access to medical care from September 12 to 21, 2022, when White had COVID; and requiring him to wear paper clothes "in violation of federal regulation" for three days. (Id. ¶¶ 33, 37). As relief, he seeks monetary damages. (Id. ¶¶ 35, 39). He further alleges that the BOP's "de facto policy of placing and maintaining inmates with serious mental illness in paper clothes on a Captain's authority without providing daily changes of clothes violates 28 C.F.R. § 541.3." (Id. ¶ 41). As relief for this claim, White seeks an injunction against BOP, Warden C. Carter, and Rakowski from placing inmates in paper clothes when that inmate has been diagnosed with a serious mental illness. (Id. ¶ 42).

On November 29, 2023, Defendants Federal Bureau of Prisons and the United States filed a Motion to Dismiss or, in the alternative, for Summary Judgment. (ECF No. 10). White filed an Opposition on December 15, 2023, (ECF No. 12), and several supplements to the Opposition on January 12, 2024, (ECF Nos. 17–20). Defendants filed a Reply on February 14, 2024. (ECF No. 21). On February 23, 2024, White filed a Motion for Leave to File Surreply. (ECF No. 24).

## II.    DISCUSSION

### A.    <u>Motion for Leave to File Surreply</u>

In support of his Motion for Leave to File Surreply, White states that the United States has raised a new issue in its Reply to his Opposition. (Mot. Leave File Surreply ¶ 1, ECF No. 24). Specifically, White claims that the United States relies upon a statement, taken out of context, from another proceeding that in November 2023, while White was in general population and receiving the medication Mirtazapine for his PTSD, his condition was in remission. (<u>Id.</u> ¶¶ 1, 3). No party is entitled to file a surreply unless otherwise ordered by the Court. <u>See</u> Local Rule 105.2(a) (D.Md. 2023). A surreply is most often permitted when the moving party must respond to matters raised for the first time in a reply. <u>See</u> <u>Lewis v. Rumsfeld</u>, 154 F.Supp.2d 56, 61 (D.D.C. 2001). To the extent that White's Motion has addressed the alleged newly raised matter—that White's PTSD is in remission—the Motion shall be granted. The Court will consider White's assertion that so long as he remains in general population, receives his medication, and BOP staff do not cause him serious emotional distress, his PTSD is in check. To the extent that White is seeking to file additional pleadings to address this issue, the Motion is denied.

### B.    <u>Standard of Review</u>

#### 1.    **Rule 12(b)(1) and (b)(6) Dismissal**

Before the merits of White's claims may be addressed, it must first be determined if this Court has jurisdiction to consider his negligence, NIED, and IIED claims under the Federal Tort Claims Act ("FTCA"). If an applicable exception applies to these claims, this

Court does not have subject matter jurisdiction. See United States v. Hays, 515 U.S. 737, 742 (1995) ("[F]ederal courts are under an independent obligation to examine their own jurisdiction . . . ."). A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). See Khoury v. Meserve, 268 F.Supp.2d 600, 606 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. See Demetres v. E. W. Const., Inc., 776 F.3d 271, 272 (4th Cir. 2015); see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (alteration in original); see also Buchanan v. Consol. Stores Corp., 125 F.Supp.2d 730, 736 (D.Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns, 585 F.3d at 192; accord Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore, 22 F.Supp.3d 519, 524 (D.Md. 2014). In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." Kerns, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the

pleadings without converting the proceeding to one for summary judgment."[4] Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004); see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is

---

[4] Here, the United States has styled its Motion as a motion to dismiss, or in the alternative, for summary judgment. (ECF No. 10). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)). The Court declines to convert the Motion in this instance, but will consider material beyond the Complaint for purposes of determining whether it has subject matter jurisdiction over White's tort claims. See Velasco, 370 F.3d at 398 (courts may consider evidence outside the pleadings without converting a motion to dismiss when the defendant raises a factual jurisdictional challenge).

not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994); <u>Lambeth v. Bd. of Comm'rs</u>, 407 F.3d 266, 268 (4th Cir. 2005) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and courts must liberally construe these complaints. <u>See</u> <u>Johnson v. Silver</u>, 742 F.2d 823, 825 (4th Cir. 1984). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

**C.**   **Analysis**

**1.**   **FTCA Discretionary Function Exception**

White's claims for negligence, NIED, and IIED are subject to dismissal under the FTCA's discretionary function exception. Under the FTCA, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment." 28 U.S.C. § 1346(b). A claim is actionable under the FTCA if it alleges the six elements of § 1346(b), which are that the claim be: (1)

against the United States, (2) for money damages, (3) for injury or loss of property, or personal injury or death, (4) caused by the negligent or wrongful act or omission of any employee of the Government, (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. See Brownback v. King, 592 U.S. 209, 212 (2021). "[A] plaintiff's failure to state a claim under Rule 12(b)(6) does not deprive a federal court of subject-matter jurisdiction . . . . However, a plaintiff must plausibly allege all jurisdictional elements." Id. at 217 (citing Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 89 (2014)). "And in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." Brownback, 592 U.S at 217 (citing FDIC v. Meyer, 510 U.S. 471, 477 (1994)).

As a waiver of sovereign immunity, the FTCA is to be narrowly construed. See United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992). Immunity is not waived for any claim based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(d). Prior to filing suit in this Court, an FTCA plaintiff must file an administrative claim which is jurisdictional and may not be waived. 28 U.S.C. § 2675(a); see McNeil v. United States, 508 U.S. 106, 112 (1993); see also Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990).

The discretionary function exception covers acts which involve an element of judgment or choice. United States v. Gaubert, 499 U.S. 315, 322 (1991). To determine if a

particular act falls within the exception a court must first determine whether it involved an element of judgment or choice. If so, the court must go on to determine if the decision is the kind that the exception was designed to shield. Berkovitz v. United States, 486 U.S. 531, 536 (1988). "[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." Gaubert, 499 U.S. at 324. Where the discretionary function exception applies, a federal district court lacks jurisdiction under the FTCA. Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 971 (4th Cir. 1992). It is the plaintiff's burden to demonstrate that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to the claim being raised. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). If a plaintiff does not meet this burden, the claim must be dismissed. See Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).

A two-part test determines whether the discretionary function exception applies. "First, we consider whether the conduct at issue 'involves an element of judgment or choice.'" Bulger v. Hurwitz, 62 F.4th 127, 142 (4th Cir. 2023) (quoting Rich v. United States, 811 F.3d 140, 144 (4th Cir. 2015)). Where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the conduct at issue is not discretionary. Berkovitz, 486 U.S. at 536. The second prong of the test examines "whether the conduct at issue 'involve[s] the permissible exercise of policy judgment.'" Bulger, 62 F.4th at 142 (quoting Berkovitz, 486 U.S. at 537). The second part of the test does not focus on the defendant's "subjective intent but on the nature of the actions taken

and on whether they are susceptible to policy analysis." <u>Gaubert</u>, 499 U.S. at 325. "Because waivers of sovereign immunity must be strictly construed," <u>Wood v. United States</u>, 845 F.3d 123, 127 (4th Cir. 2017), "FTCA plaintiffs have the burden of showing that the discretionary function exception does not foreclose their claim," <u>Seaside Farm, Inc. v. United States</u>, 842 F.3d 853, 857 (4th Cir. 2016).

The challenged actions at issue here are: (1) placement of White in administrative detention status in the SHU for a quarantine period and to await bed space in the general population; (2) placement of White in the SHU on September 12, 2022 when he tested positive for COVID-19; (3) promulgation of unspecified policies between August and September 2022 which allegedly allowed the spread of COVID-19;[5] and (4) requiring White to wear alternate clothing from September 17 to 20, 2022 without proper approval. (Compl. ¶¶ 8–30). Each of these actions is discretionary and not actionable under the FTCA.

First, the BOP's decisions about where to house White when he arrived at FCI-Cumberland, and where he would be housed when he tested positive for COVID-19, are discretionary. The "broad directives" governing the BOP's assignment of inmates to particular prisons and housing assignments as set forth in 18 U.S.C. § 4042(a)(2)–(3), "afford the BOP 'discretion regarding the implementation of those mandates.'" <u>Bulger</u>, 62 F.4th at 143 (quoting <u>Rich</u>, 811 F.3d at 145). Where, as here, the "statute does not dictate

---

[5] White does not specify which policies or decisions he refers to, and thus any claim made on such policies will be dismissed. <u>United Black Firefighters</u>, 604 F.2d at 847 (the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events).

any particular course of action or proscribe certain conduct," the first prong of the discretionary function test is satisfied.  Bulger, 62 F.4th at 143.

Second, the decision to require White to wear alternate clothing is governed by 28 C.F.R. § 541.31 which states that the "living conditions in the SHU will meet or exceed standards for healthy and humane treatment, including, but not limited to, the following specific conditions: . . . [the inmate] will receive adequate institution clothing . . . [and] necessary opportunities to exchange clothing and/or have it washed." Id. While White makes the conclusory observation that requiring him to wear paper clothes is not humane or healthy, he does not include any description of how it was not humane other than stating that the wrong person made the decision. (Opp'n Resp. Mot. Dismiss Summ. J. ["Opp'n"] at 11, ECF No. 12). White claims that he was not offered a change of paper clothes and that "staff specifically refused to change the paper clothes," but he gives no indication of when he asked for a change of clothes or who he asked to provide them. (Id.). He states he was "left all but nude for three days in artificially cold conditions" after the paper clothes disintegrated. (Id.). With these facts, White has not sufficiently supported a finding that the regulation falls outside of the discretionary function exception.[6] The regulation at issue permits BOP employees to exercise discretion regarding when to require alternate clothing. Much like the broad discretion given in 18 U.S.C. § 4042, the directive to provide "adequate clothing" and to provide "opportunities" to exchange the clothing does not

---

[6] Even if the requirements of 28 C.F.R § 541.31 are viewed as non-discretionary, White's claim in connection with the alternate clothing fails for the additional reasons set forth below.

contain the sort of mandatory language required to remove it from the purview of the discretionary function exception. See 28 C.F.R. § 541.31.

The second prong examines whether the conduct involved a permissible exercise of policy judgment. In Bulger, the Fourth Circuit found that "decisions concerning 'where to place inmates . . . invoke several policy considerations for prison officials" and "are precisely the kind of determinations that the discretionary function exception is intended to protect." 62 F.4th at 143 (internal quotes removed). Factors such as available resources, proper classification of inmates, and appropriate security levels are inherently grounded in social, political, and economic policy." Id. Thus, the decisions to place White in the SHU temporarily when he arrived as a precaution against the spread of COVID-19 and his assignment to SHU when he was COVID-19 positive for the same purpose are matters that fall within the ambit of the discretionary function exception.

In sum, the negligence, NIED, and IIED claims based on the aforementioned actions must be dismissed for lack of subject matter jurisdiction under the FTCA's discretionary function exception. The decision to curtail White and his cellmate's ability to destroy additional government property by placing them in alternate clothing is also a permissible exercise of policy judgment relating directly to economic considerations.[7]

## 2.    Administrative Procedure Act

---

[7] To the extent that White asserts a need to engage in discovery in his Opposition (ECF No. 12) so that he can prepare his expert reports and otherwise oppose summary judgment, his requests for discovery are denied. See Bulger, 62 F.4th at 135 (plaintiff is not entitled to discovery where discretionary function exception applies).

As to White's claim for violation of the APA, he alleges that BOP's "de facto policy of placing and maintaining inmates with serious mental illness in paper clothes on a Captain's authority without providing daily changes of clothes violates 28 C.F.R. § 541.3 and is arbitrary and capricious." (Compl. at 9). The cited regulation is entitled "Prohibited acts and available sanctions." White does not specify how the APA was violated, but assuming he is referring to this Court's reviewing authority under 5 U.S.C. § 706, the claim fails because he has not shown that the challenged action is arbitrary or capricious.

Under the APA, this Court shall "hold unlawful and set aside agency action, findings and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "A disputed action also may be set aside as arbitrary and capricious if the agency has acted 'without observance of procedure required by law.'" Safari Club Int'l v. Zinke, 878 F.3d 316, 325 (D.C. Cir. 2017) (quoting 5 U.S.C. § 706(2)(D)).

> Generally, an agency decision is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Sierra Club v. U.S. Dep't of the Interior, 899 F.3d 260, 293 (4th Cir. 2018) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). This Court may "not . . . substitute its own judgment for that of the agency and deference is especially warranted where the decision at issue requires a high level of technical expertise." Marsh v. Or. Nat. Res. Council, 490 U.S. 360, 377 (1989).

It has long been accepted that the courts must give prison officials due deference when passing judgment on the decisions they make regarding maintaining the prison population safely and securely. See Sandin v. Conner, 515 U.S. 472, 482–83 (1995). The decision to require an inmate to wear alternate clothing falls within the ambit of prison officials' expertise. It is not the province of this Court to determine how a particular prison might be more beneficently operated. Id. For this reason, this Court finds that White has not stated a valid claim under the APA.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the United States' Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 10), construed as a Motion to Dismiss, and grant in part and deny in part White's Motion to File a Surreply, (ECF No. 24). A separate Order follows.

Entered this 10th day of May, 2024.

_____/s/_____
George L. Russell, III
United States District Judge